IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
ALL DIVISIONS

RECEIVED

2006 JUN 28  A 9: 24

In Re:  FORFEITURE OF COLLATERAL IN
LIEU OF APPEARANCE IN CERTAIN PETTY
AND MINOR OFFENSE CASES

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CR MISC NO. 198

FILED

MOTION TO AMEND

JUN 2 8 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA

        Comes now the United States of America, by and through its Attorney for the

Middle District of Alabama, and moves this Honorable Court to amend its standing order

for Schedule of Forfeiture of Collateral in Lieu of Appearance for certain petty offenses

originating in the Middle District of Alabama, by adding the attached "Fort Rucker Motor

Vehicle Regulation, Chapter Three (Fort Rucker Traffic Code)" and  setting the collateral

amount for violations of said chapter, that are not otherwise punishable by law, at the

amount of thirty dollars ($30.00), and as grounds therefore states as follows:

        1.  Traditionally, the United States has prosecuted all Fort Rucker traffic offenses

in this Court by charging Alabama state law assimilated under the provisions of 18

U.S.C. § 13.  However, Alabama law does not currently prohibit certain violations of the

Fort Rucker Traffic Code, such as cell phone use while driving.  It is the intent of the

Government to begin enforcing the provisions of the Fort Rucker Traffic Code not

otherwise enforceable by law.

        2.  Title 32, CFR § 634.25(f), authorizes enforcement of military installation

traffic regulations, such as the Fort Rucker Motor Vehicle Regulation, in federal court.

Title 32, CFR § 634.25(f) also states that persons found guilty of violating an installation

traffic regulation shall be subject to a fine as determined by the local federal magistrate,

or 30 days imprisonment, or both. Department of Defense Directive (DODD) 5525.4, para 3.4, sets the maximum fine limit for a violation of an installation traffic regulation at fifty dollars ($50.00).

3. The United States and the Magistrate Judge for the Southern District agree that amending the Court's standing order for <u>Schedule of Forfeiture of Collateral in Lieu of Appearance</u> for certain petty offenses originating in the Middle District of Alabama is the appropriate action.

4. The United States proposes that a fine of thirty dollars ($30) is reasonable for a violation of provisions of the Fort Rucker Motor Vehicle Regulation, Chapter Three (Fort Rucker Traffic Code) that are not otherwise enforceable by law; and hereby respectfully requests that the Court amend its standing order for <u>Schedule of Forfeiture of Collateral in Lieu of Appearance</u> to set the collateral amount for such offenses at thirty dollars.

4. Prior to enforcement of the Fort Rucker Traffic Code under the new order, the Fort Rucker Motor Vehicle Regulation will be posted on the Fort Rucker Intranet and at conspicuous places on the installation; signs will be posted at installation entry points; and a public affairs campaign (newspaper and radio) will be conducted on and off the installation.

5. Relevant portions of 32 CFR § 634.25, Army Regulation 190-5, DODD 5525.4, and the Fort Rucker Motor Vehicle Regulation (Fort Rucker Regulation 190-5) are attached as exhibits in support of this motion, in addition to an information paper prepared by the Office of the Judge Advocate General, Criminal Law Division. (Exhibits 1-5).

Respectfully submitted this _2 2ⁿᵈ_ day of June, 2006.

Respectfully submitted,

NATHAN T. GOLDEN
SPECIAL ASSISTANT U.S.
ATTORNEY
VA BAR NO. 48323
Office of the Staff Judge Advocate
Soldier Service Center, Building 5700
Fort Rucker, Alabama 36362-5000
(334) 255-9141
Fax: (334) 255-1869
nathan.golden@rucker.army.mil

*32 CFR 634.25*

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright © 2005, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE JUNE 29, 2005 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 32 -- NATIONAL DEFENSE
SUBTITLE A -- DEPARTMENT OF DEFENSE
CHAPTER V -- DEPARTMENT OF THE ARMY
SUBCHAPTER I -- LAW ENFORCEMENT AND CRIMINAL INVESTIGATIONS
PART 634 -- MOTOR VEHICLE TRAFFIC SUPERVISION
SUBPART D -- TRAFFIC SUPERVISION
SECTION I -- TRAFFIC PLANNING AND CODES

**Go to the CFR Archive Directory**

32 CFR 634.25

§ 634.25 Installation traffic codes.

(a) Installation or activity commanders will establish a traffic code for operation of motor
vehicles on the installation. Commanders in overseas areas will establish a traffic code, under
provisions of this Part, to the extent military authority is empowered to regulate traffic on the
installation under the applicable SOFA. Traffic codes will contain the rules of the road
(parking violations, towing instructions, safety equipment, and other key provisions). These
codes will, where possible, conform to the code of the State or host nation in which the
installation is located. In addition, the development and publication of installation traffic
codes will be based on the following:

(1) Highway Safety Program Standards (23 U.S.C. 402).

(2) Applicable portions of the Uniform Vehicle Code and Model Traffic Ordinance published by
the National Committee on Uniform Traffic Laws and Ordinances.

(b) The installation traffic code will contain policy and procedures for the towing, searching,
impounding, and inventorying of POVs. These provisions should be well publicized and
contain the following:

(1) Specific violations and conditions under which the POV will be impounded and towed.

(2) Procedures to immediately notify the vehicle owner.

(3) Procedures for towing and storing impounded vehicles.

(4) Actions to dispose of the vehicle after lawful impoundment.

(5) Violators are responsible for all costs of towing, storage and impounding of vehicles for
other than evidentiary reasons.

(c) Installation traffic codes will also contain the provisions discussed as follows: (Army
users, see AR 385-55).

GOVERNMENT
EXHIBIT
2

(1) Motorcycles and mopeds. For motorcycles and other self-propelled, open, two-wheel, three-wheel, and four-wheel vehicles powered by a motorcycle-type engine, the following traffic rules apply:

(i) Headlights will be on at all times when in operation.

(ii) A rear view mirror will be attached to each side of the handlebars.

(iii) Approved protective helmets, eye protection, hard-soled shoes, long trousers and brightly colored or reflective outer upper garment will be worn by operators and passengers when in operation.

(2) Restraint systems. (i) Restraint systems (seat belts) will be worn by all operators and passengers of U.S. Government vehicles on or off the installation.

(ii) Restraint systems will be worn by all civilian personnel (family members, guests, and visitors) driving or riding in a POV on the installation.

(iii) Restraint systems will be worn by all military service members and Reserve Component members on active Federal service driving or riding in a POV whether on or off the installation.

(iv) Infant/child restraint devices (car seats) will be required in POVs for children 4 years old or under and not exceeding 45 pounds in weight.

(v) Restraint systems are required only in vehicles manufactured after model year 1966.

(3) Driver Distractions. Vehicle operators on a DoD Installation and operators of Government owned vehicles shall not use cell phones unless the vehicle is safely parked or unless they are using a hands-free device. The wearing of any other portable headphones, earphones, or other listening devices (except for hand-free cellular phones) while operating a motor vehicle is prohibited. Use of those devices impairs driving and masks or prevents recognition of emergency signals, alarms, announcements, the approach of vehicles, and human speech. DoD Component safety guidance should note the potential for driver distractions such as eating and drinking, operating radios, CD players, global positioning equipment, etc. Whenever possible this should only be done when the vehicle is safely parked.

(d) Only administrative actions (reprimand, assessment of points, loss of on-post driving privileges, or other actions) will be initiated against service members for off-post violations of the installation traffic code.

(e) In States where traffic law violations are State criminal offenses, such laws are made applicable under the provisions of 18 U.S.C. 13 to military installations having concurrent or exclusive Federal jurisdiction.

(f) In those States where violations of traffic law are not considered criminal offenses and cannot be assimilated under 18 U.S.C., DODD 5525.4, enclosure 1 expressly adopts the vehicular and pedestrian traffic laws of such States and makes these laws applicable to military installations having concurrent or exclusive Federal jurisdiction. It also delegates authority to installation commanders to establish additional vehicular and pedestrian traffic rules and regulations for their installations. Persons found guilty of violating the vehicular and pedestrian traffic laws made applicable on the installation under provisions of that directive are subject to a fine as determined by the local magistrate or imprisonment for not more than 30 days, or both, for each violation. In those States where traffic laws cannot be assimilated, an extract copy of this paragraph (f) and a copy of the delegation memorandum in DODD 5525.4, enclosure 1, will be posted in a prominent place accessible to persons

assigned, living, or working on the installation.

(g) In those States where violations of traffic laws cannot be assimilated because the Federal Government's jurisdictional authority on the installation or parts of the installation is only proprietary, neither 18 U.S.C. 13 nor the delegation memorandum in DoDD 5525.4, enclosure 1, will permit enforcement of the State's traffic laws in Federal courts. Law enforcement authorities on those military installations must rely on either administrative sanctions related to the installation driving privilege or enforcement of traffic laws by State law enforcement authorities.

**HISTORY:**
[56 FR 3930, Jan. 31, 1991; 70 FR 18969, 18979, Apr. 12, 2005]

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
10 U.S.C. 30112(g); 5 U.S.C. 2951; Pub. L. 89-564; 89-670; 91-605; and 93-87.

**NOTES:**
[EFFECTIVE DATE NOTE: 70 FR 18969, 18979, Apr. 12, 2005, revised Part 634, effective May 12, 2005.]


NOTES APPLICABLE TO ENTIRE CHAPTER:
EDITORIAL NOTE: Other regulations issued by the Department of the Army appear in title 33, chapter II; and title 36, chapter III.
CROSS REFERENCES: American Battle Monuments Commission: See Parks, Forests, and Public Property, 36 CFR, chapter IV.
Department of Veterans Affairs: See Pensions, Bonuses, and Veterans' Relief, 38 CFR, chapter I.
Federal Acquisition Regulations System, 48 CFR.
ABBREVIATIONS: The following abbreviations are used in this chapter: AGCT = Army General Classification Test. AGO = Adjutant General's Office. APP = Army Procurement Prodedure. AR = Army Regulations. ASPR = Armed Services Procurement Regulations. ATC = Air Transport Command. A. W. = Articles of War. AWOL = Absent Without Leave. Comp. Gen. = Comptroller General. OCF = Office, Chief of Finance. ROTC = Reserve Officer's Training Corps. ZI = Zone of Interior.

992 words


    Service: **Get by LEXSTAT®**
   Citation: **32 CFR 634.25**
     View: Full
Date/Time: Saturday, July 9, 2005 - 11:24 AM EDT



About LexisNexis | Terms and Conditions



Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

INFORMATION PAPER

DAJA-CL
11 January 2006

SUBJECT:  Code of Federal Regulation, Part 634 prohibition on use of cell phones while driving on a military installation

1. Issues:

a. Is the prohibition against the use of cell phones while driving on a military installation, which was included in the recently published Code of Federal Regulation (CFR) Part 634 Motor Vehicle Traffic Supervision, required to be incorporated into installation traffic codes?

b. Should this prohibition be incorporated into traffic codes on installations in states whose traffic laws do not prohibit cell phone use while driving?

c. Does the recently published CFR Part 634.25(f) change the previously established maximum fine of $50 for violations of the traffic codes made applicable by DODD 5525.4 so that fines are now determined by the local magistrate?

2. Discussion:

a. *Implementation of CFR Part 634.*

(1)  Code of Federal Regulation (CFR) Part 634 Motor Vehicle Traffic Supervision was published as a final agency rule on 12 April 2005.  The Administrative Assistant to the Secretary of the Army (AASA) has authenticated the publication of the rule in Joint Army Regulation 190-5 (AR 190-5, OPNAV 11200.5C, MCO 5110.1C, DLAR 5720.1). Accordingly, installations are required to change their installation traffic codes to include the mandatory provisions of CFR Part 634 prohibiting the use of cell phones while driving on military installations.

(2)  Under 40 USCS 1315 (c)(1), regulations for the administration of federal property will be posted and remain posted in a conspicuous place on the property. Thus, installation traffic codes that are adopted to include the new cell phone provision, or any other provision deemed necessary by the installation commander, must be conspicuously posted on the installation.

GOVERNMENT
EXHIBIT
3

DAJA-CL
SUBJECT:  Code of Federal Regulation, Part 634 prohibition on use of cell phones
while driving on a military installation


*b. Incorporation of the prohibition against cell phone use while driving (CFR Part
634.25(c)(3)) into traffic codes of military installations located in states that do not
prohibit such use.*

 (1)  Some state traffic laws prohibit the use of cell phones while driving as a violation of
the criminal code of those states.  Other states prohibit the use of cell phones as a
traffic violation but do not consider the violation a criminal offense.  Still other states do
not have a prohibition against the use of cell phones while driving.

(2)  CFR 634.25(e) states that where traffic law violations are state criminal offenses,
such laws are made applicable under the provisions of 18 U.S.C. 13 to military
installations having concurrent or exclusive federal jurisdiction.  In states where violation
of traffic laws are not considered criminal offenses and cannot be assimilated under 18
U.S.C., DODD 5525.4 requires the adoption of the vehicle and pedestrian traffic law of
such states and makes these laws applicable to military installations having concurrent
or exclusive federal jurisdiction.  Therefore, in those states having a prohibition against
the use of cell phones while driving, the prohibition is applicable to military installations
having concurrent or exclusive federal jurisdiction pursuant to CFR 634.25(e) or (f).

 (3)  For military installations in states that do not have any prohibition against the use of
cell phones while driving, CFR Part 634.25(c) requires that installation traffic codes
include the following provision: " (3) *Driver distractions*. Vehicle operators on a DOD
Installation and operators of government owned vehicles shall not use cell phones
unless the vehicle is safely parked or the operator is using a hands free device.  The
wearing of any other portable headphones, earphones, or other listening devices
(except for hands free cellular phones) while operating a motor vehicle are
prohibited...."  CFR Part 634.25(c) mandates the inclusion of this provision in
installation traffic codes regardless of whether it is prohibited by local state law. The
recently approved Army Regulation 190-5 also includes the cell phone prohibition.

*c. Penalties for traffic infractions on military installations.*

(1)  In addition to the newly adopted rule concerning the prohibition on the use of cell
phones on military installations another provision at CFR 634.25(f) changed language
concerning fines authorized for violations.  The previous version of the regulation read:
"Persons found guilty of violating the vehicular and pedestrian traffic laws made
applicable on the installation by that directive (i.e. the non criminal state traffic codes
and other codes adopted by installation commanders made applicable by DODD
5525.4) are subject to a fine of not more than $50.00 or imprisonment for not more than
30 days, or both for each violation."  The new version replaced this language with a
provision that states that fines will be determined by the "local magistrate."

2

DAJA-CL
SUBJECT: Code of Federal Regulation, Part 634 prohibition on use of cell phones while driving on a military installation

(2) This change in penalties in the CFR was prompted by a statutory change in the Homeland Security Act in 2002. Previously, under 40 USC 318, the Administrator of the General Services Administration (GSA) could make rules and regulations for government property. The Administrator of the GSA delegated to the Secretary of Defense, or his designee, the authority to set rules for military installations. Under the delegated authority, the Secretary of Defense promulgated DODD 5525.4 which made non criminal state traffic codes applicable on military installations and placed a $50 cap on the fine that could be issued for those infractions. However, the Homeland Security Act in 2002 eliminated 40 USC 318 and restated it as 40 USCS 1315. Under 40 USCS 1315 c (1), the Secretary of Homeland Security now makes regulations for federal property. Under 40 USCS 1315c (2), persons violating such regulations will be fined under 18 United States Code. Fines for traffic violations under 18 USC are determined by federal magistrates.

(3) While the new 18 USCS 1315 authorizes the Secretary of Homeland Security to promulgate regulations for federal property, there has not yet been a regulation by the Secretary of Homeland Security for traffic enforcement on military installations. Section 1512 of the Homeland Security Act (6 U.S.C. 552) (also known as the Savings Provision) states that completed administrative actions of an agency shall not be affected by the Act but shall continue in effect until changed or rescinded. Thus the previous delegation by the Administrator of the GSA to the Secretary of Defense to make rules for traffic regulation on military installations, as well as the DODD by the Secretary of Defense setting maximum limitations on the fines imposed for violation of those regulations, remain in effect. Accordingly, until a new rule is promulgated by the Director of Homeland Security or DODD 5525.4 is rescinded, the previous limitation of $50 for fines for infractions of non criminal state traffic codes on military installations continues to apply.

(4) The Department of Defense is presently re-drafting DODD 5525.4 which will be coordinated with the Department of Homeland Security. The revised DODD 5525.4 will address the issue of maximum fines for traffic infractions. In the interim, fines for violations made applicable to military installations by DODD 5525.4 (i.e. the non criminal state traffic codes made applicable to installations and other codes adopted by installation commanders) are determined by the federal magistrate but will be limited to $50.00 or imprisonment for not more than 30 days, or both for each violation.

Prepared By: LTC Cotell 703-588-6745
Approved by: COL Darpino, Chief, Crim Law

3



# Department of Defense
# DIRECTIVE

**NUMBER 5525.4**
November 2, 1981

Incorporating Change 1, October 31, 1986

ASD(MRA&L)

SUBJECT: Enforcement of the State Traffic Laws on DoD Installations

References: (a) DoD Instruction 6055.4, "Department of Defense Traffic Safety
Program," November 7, 1978
(b) Delegation of Authority to the Secretary of Defense by the
Administrator, General Services Administration, March 20, 1981
(enclosure 1)
(c) Section 13 of title 18, United States Code
(d) Section 318c of title 40, United States Code

## 1. PURPOSE

This Directive establishes policies pursuant to the requirements of reference (a) and to
authority delegated to the Secretary of Defense under reference (b) for the
enforcement, on DoD military installations, of those State vehicular and pedestrian
traffic laws that cannot be assimilated under reference (c).

## 2. APPLICABILITY AND SCOPE

2.1. The provisions of this Directive apply to the Office of the Secretary of
Defense, the Military Departments, the Organization of the Joint Chiefs of Staff, the
Unified and Specified Commands, and the Defense Agencies.

2.2. The provisions encompass all persons who operate or control a motor vehicle
or otherwise use the streets of a military installation over which the United States
exercises exclusive or concurrent legislative jurisdiction.

1


GOVERNMENT
EXHIBIT
4

*DODD 5525.4, November 2, 1981*

2.3.  The provisions govern only vehicular and traffic offenses or infractions that cannot be assimilated under reference (c), thereby precluding application of State laws to traffic offenses committed on military installations.

3. <u>POLICY</u>

3.1.  It is the policy of the Department of Defense that an effective, comprehensive traffic safety program be established and maintained at all military installations, as prescribed in reference (a).

3.2.  State vehicular and pedestrian traffic laws that are now or may hereafter be in effect shall be expressly adopted and made applicable on military installations to the extent provided by this Directive.   All persons on a military installation shall comply with the vehicular and pedestrian traffic laws of the State in which the installation is located.

3.3.  *Pursuant to the authority established in enclosure 1, installation commanders of all DoD installations in the United States and over which the United States has exclusive or concurrent legislative jurisdiction are delegated the authority to establish additional vehicular and pedestrian traffic rules and regulations for their installations.  All persons on a military installation shall comply with locally established vehicular and pedestrian traffic rules and regulations.*

3.4.  *A person found guilty of violating, on a military installation, any State vehicular or pedestrian traffic law or local installation vehicular or pedestrian traffic rule or regulation made applicable to the installation under the provisions of this Directive is subject to a fine of not more than $50 or imprisonment for not more than 30 days, or both, for each violation (40 U.S.C. 318c (reference (d)).*

3.5.  This Directive does not limit the application of any Federal law or regulation or, under 18 U.S.C. 13 (reference (c)), any State law made applicable to offenses committed on military installations.

3.6.  A copy of this Directive shall be posted in an appropriate place on the DoD installation concerned.

2

*DODD 5525.4, November 2, 1981*

## 4. RESPONSIBILITIES

4.1. The <u>Assistant Secretary of Defense (Force Management and Personnel)</u> (ASD(FM&P)) shall modify this Directive, as appropriate.

4.2. The <u>Secretaries of the Military Departments</u> shall comply with this Directive.

## 5. EFFECTIVE DATE AND IMPLEMENTATION

This Directive is effective immediately. Forward two copies of implementing documents to the Assistant Secretary of Defense (Force Management and Personnel) within 120 days.

William H. Taft, IV
Deputy Secretary of Defense

Enclosures - 1
    E1. Delegation of Authority to the Secretary of Defense

3

*DODD 5525.4, November 2, 1981*

# E1. ENCLOSURE 1

## DELEGATION OF AUTHORITY TO THE SECRETARY OF DEFENSE

GENERAL SERVICES ADMINISTRATION                                    6820-22

(D-81-   )

DELEGATION OF AUTHORITY TO THE SECRETARY OF DEFENSE

1. <u>Purpose.</u>  This delegation authorizes the Secretary of Defense to assist in controlling vehicular and pedestrian traffic on military installations in the United States.

2. <u>Effective date.</u>  This delegation became effective on March 20, 1981.

3. <u>Delegation.</u>

    a.  Pursuant to the authority vested in me by the Federal Property and Administrative Services Act of 1949 (63 Stat. 377), as amended, and the Act of June 1, 1948 (62 Stat. 281), as amended, authority is hereby delegated to the Secretary of Defense to make all needful rules and regulations, and to attach to these rules and regulations such reasonable penalties, not to exceed those prescribed in 40 U.S.C. 318c, as will ensure their enforcement for governing vehicular and pedestrian traffic on military installations of the Department of Defense, as defined in 40 U.S.C. 612, in the United States and over which the United States has exclusive or concurrent legislative jurisdiction.

    b.  The Secretary of Defense may redelegate this authority to any officer, official, or employee of the Department of Defense.

    c.  This authority shall be exercised in accordance with the limitations and requirements of the above-cited acts, and the policies, procedures, and controls prescribed by the General Services Administration.

4. <u>Effect on other directives.</u>  FPMR Temporary Regulation D-28 is revoked.

Dated:   JUN 24 1981

(Signed,      H D. C  en
           _____   t  r

4                                                        ENCLOSURE 1

Army Regulation 190–5
OPNAV 11200.5D
AFI 31-218(I)
MCO 5110.1C
DLAR 5720.1

Military Police

# Motor Vehicle Traffic Supervision

Departments of the Army,
the Navy,
the Air Force,
Marine Corps,
Defense Logistics Agency
Washington, DC
25 January 2006

## UNCLASSIFIED



GOVERNMENT
EXHIBIT
5

(2) Complete studies of traffic operations of entire installations. (This can include long–range planning for future development of installation roads, public highways, and related facilities.)

(3) Assistance in complying with established traffic engineering standards.

*e.* Installation commanders should submit requests for traffic engineering services in accordance with applicable Service or agency directives.

## 4–2. Installation traffic codes

*a.* Installation or activity commanders will establish a traffic code for operation of motor vehicles on the installation. Commanders in overseas areas will establish a traffic code, under provisions of this regulation, to the extent military authority is empowered to regulate traffic on the installation under the applicable SOFA. Traffic codes will contain the rules of the road (parking violations, towing instructions, safety equipment, and other key provisions). These codes will, where possible, conform to the code of the State or host nation in which the installation is located. In addition, the development and publication of installation traffic codes will be based on the following:

(1) Highway Safety Program Standards (23 USC 402).

(2) Applicable portions of the Uniform Vehicle Code and Model Traffic Ordinance published by the National Committee on Uniform Traffic Laws and Ordinances.

*b.* The installation traffic code will contain policy and procedures for the towing, searching, impounding, and inventorying of POVs. These provisions should be well publicized and contain the following:

(1) Specific violations and conditions under which the POV will be impounded and towed.

(2) Procedures to immediately notify the vehicle owner.

(3) Procedures for towing and storing impounded vehicles.

(4) Actions to dispose of the vehicle after lawful impoundment.

(5) Violators are responsible for all costs of towing, storage, and impounding of vehicles for other than evidentiary reasons.

*c.* Installation traffic codes will also contain the provisions discussed below. (Army users, see AR 385–55.)

(1) *Motorcycles and mopeds.* For motorcycles and other self–propelled, open, 2–wheel, 3–wheel, and 4–wheel vehicles powered by a motorcycle–type engine, the following traffic rules apply:

*(a)* Headlights will be on at all times when in operation.

*(b)* A rear view mirror will be attached to each side of the handlebars.

*(c)* Approved protective helmets, eye protection, hard–soled shoes, long trousers, and brightly colored or reflective outer upper garment will be worn by operators and passengers when in operation.

(2) *Restraint systems.*

*(a)* Restraint systems (seat belts) will be worn by all operators and passengers of U.S. Government vehicles on or off the installation.

*(b)* Restraint systems will be worn by all civilian personnel (family members, guests, and visitors) driving or riding in a POV on the installation.

*(c)* Restraint systems will be worn by all military Service members and Reserve Component members on active Federal Service driving or riding in a POV whether on or off the installation.

*(d)* Infant/child restraint devices (car seats) will be required in POVs for children 4 years old or under and not exceeding 45 pounds in weight.

*(e)* Restraint systems are required only in vehicles manufactured after model year 1966.

(3) *Driver distractions.* Vehicle operators on a DOD installation and operators of Government owned vehicles will not use cell phones unless the vehicle is safely parked or unless they are using a hands–free device. The wearing of any other portable headphones, earphones, or other listening devices (except for hands–free cellular phones) while operating a motor vehicle is prohibited. Use of those devices impairs driving and masks or prevents recognition of emergency signals, alarms, announcements, the approach of vehicles, and human speech. The DOD component safety guidance should note the potential for driver distractions such as eating and drinking, operating radios, CD players, global positioning equipment, and so on. Whenever possible this should only be done when the vehicle is safely parked.

*d.* Only administrative actions (reprimand, assessment of points, loss of on–post driving privileges, or other actions) will be initiated against Service members for off–post violations of the installation traffic code.

*e.* In States where traffic law violations are State criminal offenses, such laws are made applicable under the provisions of 18 USC 13 to military installations having concurrent or exclusive Federal jurisdiction.

*f.* In those States where violations of traffic law are not considered criminal offenses and cannot be assimilated under 18 USC, DODD 5525.4, enclosure 1 expressly adopts the vehicular and pedestrian traffic laws of such States and makes these laws applicable to military installations having concurrent or exclusive Federal jurisdiction. It also delegates authority to installation commanders to establish additional vehicular and pedestrian traffic rules and regulations for their installations. Persons found guilty of violating the vehicular and pedestrian traffic laws made applicable on the installation under provisions of that directive are subject to a fine as determined by the local magistrate or imprisonment for not more than 30 days, or both, for each violation. In those States where traffic laws

cannot be assimilated, an extract copy of this paragraph and a copy of the delegation memorandum in DODD 5525.4, enclosure 1, will be posted in a prominent place accessible to persons assigned, living, or working on the installation.

*g.* In those States where violations of traffic laws cannot be assimilated because the Federal Government's jurisdictional authority on the installation or parts of the installation is only proprietary, neither 18 USC 13 nor the delegation memorandum in DODD 5525.4, enclosure 1, will permit enforcement of the State's traffic laws in Federal courts. Law enforcement authorities on those military installations must rely on either administrative sanctions related to the installation driving privilege or enforcement of traffic laws by State law enforcement authorities.

## Section II
## Traffic Law Enforcement

### 4–3. Traffic law enforcement principles

*a.* Traffic law enforcement should motivate drivers to operate vehicles safely within traffic laws and regulations and maintain an effective and efficient flow of traffic. Effective enforcement should emphasize voluntary compliance by drivers and can be achieved by the following actions:

(1) Publishing a realistic traffic code well known by all personnel.

(2) Adopting standard signs, markings, and signals in accordance with NHSPS and the Manual on Uniform Traffic Control Devices for Streets and Highways.

(3) Ensuring enforcement personnel establish courteous, personal contact with drivers and act promptly when driving behavior is improper or a defective vehicle is observed in operation.

(4) Maintaining an aggressive program to detect and apprehend persons who drive while privileges are suspended or revoked.

(5) Using sound discretion and judgment in deciding when to apprehend, issue citations, or warn the offender.

*b.* Selective enforcement will be used when practical. Selective enforcement deters traffic violations and reduces accidents by the presence or suggested presence of law enforcement personnel at places where violations, congestion, or accidents frequently occur. Selective enforcement applies proper enforcement measures to traffic congestion and focuses on selected time periods, conditions, and violations that cause accidents. Law enforcement personnel use selective enforcement because that practice is the most effective use of resources.

*c.* Enforcement activities against intoxicated driving will include—

(1) Detecting, apprehending, and testing persons suspected of driving under the influence of alcohol or drugs.

(2) Training law enforcement personnel in special enforcement techniques.

(3) Enforcing BAC standards (see para 4–11).

(4) Denying installation driving privileges to persons whose use of alcohol or other drugs prevents safe operation of a motor vehicle.

*d.* Installation officials will formally evaluate traffic enforcement on a regular basis. That evaluation will examine procedures to determine if the following elements of the program are effective in reducing traffic accidents and deaths:

(1) Selective enforcement measures.

(2) Suspension and revocation actions.

(3) Chemical breath–testing programs.

### 4–4. Speed–measuring devices

Speed–measuring devices will be used in traffic control studies and enforcement programs. Signs may be posted to indicate speed–measuring devices are being used.

*a. Equipment purchases.* Installations will ensure operators attend an appropriate training program for the equipment in use.

*b. Training and certification standards.*

(1) The commander of each installation using traffic radar will ensure that personnel selected as operators of such devices meet training and certification requirements prescribed by the State (or SOFA) in which the installation is located. Specific information on course dates, costs, and prerequisites for attending may be obtained by contacting the State agency responsible for police traffic radar training.

(2) Installation commanders located in States or overseas areas where no formal training program exists, or where the military personnel are unable or ineligible to participate in police traffic radar training programs, may implement their own training program or use a selected civilian institution or manufacturer's course.

(3) The objective of the civilian or manufacturer–sponsored course is to improve the effectiveness of speed enforcement through the proper and efficient use of speed–measurement radar. On successful completion, the course graduate must be able to—

*(a)* Describe the association between excessive speed and accidents, deaths, and injuries, and describe the traffic safety benefits of effective speed control.

*(b)* Describe the basic principles of radar speed measurement.